UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

3/16/2026 9:00AM
RECEIVED AND FILED
CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN, P.R.



Jeannette Soto Santini
Plaintiff,

vs.

Case No: ___3:26-cv-01162___

Bank Popular of Puerto Rico et al
Defendants,

CIVIL COMPLAINT, **Racketeer Influenced and Corrupt Organizations Act ("RICO")**, Embezzlement of Federal funds, Extortion, Breach contract, Conflict of Interest. Due Process Clause and Equal Protection Clause Violation. Deprivation of Rights Under Color of Law. Conceal Court order or not respond to Jeannette. USMS Obstruction Notification Services. Obstruction of Justice. Defamation. Mortgage fraud agreements. Bribery. Wrong Rulling Court Orders. Concealment. False mortgage claim, Perjury and Frivolous civil process notification.

Plaintiff **Jeannette Soto Santini** brings this civil action **pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968**, including **18 U.S.C. § 1962(c)** and **§ 1962(d)**, which prohibit any person associated with an enterprise engaged in interstate commerce from conducting or participating in the enterprise's affairs through a pattern of racketeering activity or conspiracy to do so.

This civil action is brought **pursuant to**:

- **18 U.S.C. §§ 1961–1968** (Racketeer Influenced and Corrupt Organizations Act – "RICO");
- **18 U.S.C. § 1341** (Mail Fraud);
- **18 U.S.C. § 1343** (Wire Fraud);
- **18 U.S.C. § 1503** (Obstruction of Justice);
- **18 U.S.C. § 1512** (Witness Tampering and Obstruction);
- **42 U.S.C. § 1983** (Deprivation of Rights Under Color of Law);
- **28 U.S.C. § 1331** (Federal Question Jurisdiction);
- **28 U.S.C. § 1343** (Civil Rights Jurisdiction);
- **28 U.S.C. § 1367** (Supplemental Jurisdiction over related state-law claims).

LIST OF THE PARTIES

[ X ] All parties do not appear in the caption of the Case on the Cover page. A list of all parties to the proceeding in the Court whose judgment is the Subject of this Case is as follows

DEFENDANTS

1. Bank Popular of Puerto Rico.

2. Commonwealth of Puerto Rico, Pedro Pierluisi.

3. United States Postal Services, Old San Juan Area. [David Steiner]

4. Department of Justice, San Juan; Puerto Rico, Lourdes Lynnette Gómez Torres.

5. Maite D. Oronoz Rodríguez, Supreme Court of Puerto Rico

6. Duncan R. Maldonado Ejarque, lawyer BPPR

7. Miguel Angel Matias Vargas, Civil Notification

8. Jessica Torres-Galindo [BPPR]

9. Ivan Alonso Costa, lawyer mortgage closing

10. Fredeswin Perez-Caballero, lawyer.

11. Carla M. Nevarez Perez, lawyer of BPPR.

12. Jonathan Rodriguez, USMS Judicial Administrative, District of Puerto Rico.

13. Wilmer Ocasio-Ibarra, USMS District of Puerto Rico.

14. Marcos Villafañe, USMS Judicial Front Desk, District of Puerto Rico

15. Judge Chief Raul M. Arias Marxuach, District Court for the District of Puerto Rico

16. Judge Jay Alonso de la Torre Garcia-Gregory, District Court for the District of Puerto Rico

17. Judge Pedro Alberto Delgado Hernandez, District Court for the District of Puerto Rico

18. Judge Camille Lizette Velez-Rive, District Court for the District of Puerto Rico

19. Judge Silvia Luisa Carreno-Coll, District Court for the District of Puerto Rico

20. Senior Judge William Glover Young, Court of Appeals for the First Circuit

21. Senior Judge Colleen Kollar-Kotelly, District Court for the District of DC.

22. Sigfrido Steidel Figueroa, Administrative Director Court of Puerto Rico

23. Judge Vanessa I. Mendez Torres [Judge Court of First Instance, Coamo]

24. Judge Joel Ayala Martinez [Judge Court of First Instance, Coamo]

25. Javier O. Sepulveda Rodriguez [Clerk, Supreme Court of Puerto Rico]

26. Office of the Commissioner of Financial Institutions [OCIF]

27. Judge Maria del Rocio Antongiorgi-Jordan, District Court for the District of Puerto Rico

28. David J. Barron, Chief Judge, Court of Appeals for the First Circuit,

2

29. Gustavo A. Gelpí, Court of Appeals for the First Circuit,

30. Jeffrey R. Howard, Court of Appeals for the First Circuit,

31. Sandra Lea Lynch, Judge Court of Appeals for the First Circuit,

32. CRIM of Puerto Rico

33. Housing Finance Authority of Puerto Rico

A copy of this case is being shared with TRUMP, SENATE, before a case number is assigned to prevent the Deputy Clerk or Judge Chief from objecting to accepting it. Jurisdiction belongs to Puerto Rico. Jeannette tried to file the case in the US District Court in DC and the Supreme Court in DC, but they would not accept it.

cc.
Trump Administration
President of United States Donald J. Trump
725 Fifth Avenue
New York, NY 10022

cc.
Chairman Chuck Grassley
Senate Judiciary Committee
224 Dirksen Senate Office Building
Washington, DC 20510

cc.
Public Integrity Section
Criminal Division
U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530-0001

cc.
Judicial Conference Committee on Judicial Conduct and Disability
Attn: Office of the General Counsel
Administrative Office of the United States Courts
One Columbus Circle, NE
Washington, D.C. 20544

;

3

## JURISDICTION

Jurisdiction is proper in the **United States District Court for the District of Puerto Rico** pursuant to:

- **28 U.S.C. § 1331**, because the action arises under federal law, including RICO and federal civil rights statutes.
- **28 U.S.C. § 1343(a)(3)**, because the action seeks redress for the deprivation of constitutional rights under color of law.
- **18 U.S.C. § 1964(c)**, which provides jurisdiction for civil RICO actions where a plaintiff has been injured in business or property by reason of racketeering activity.

The events giving rise to this action occurred primarily in **Puerto Rico**, including mortgage origination, foreclosure proceedings, and related judicial actions.

## VENUE

Venue is proper under **28 U.S.C. § 1391(b)** because a substantial part of the events or omissions giving rise to the claims occurred in Puerto Rico.

However, **in the event credible evidence of bias, procedural irregularity, or conflict affecting impartial adjudication arises**, Plaintiff respectfully requests that the Court consider transfer of venue in the **interest of justice** pursuant to:

- **28 U.S.C. § 1404(a)** – Transfer for convenience and fairness.
- **28 U.S.C. § 1406(a)** – Transfer to cure defects affecting fair adjudication.

Such transfer may be necessary to ensure a **neutral forum and impartial trial** consistent with federal law and constitutional protections.

## CONSTITUTIONAL PROVISIONS INVOLVED

This action arises under the following provisions of the **United States Constitution**:

**Fifth Amendment – Due Process Clause**

"No person shall… be deprived of life, liberty, or property, without due process of law."

This protects individuals from federal actions that deprive property rights without proper legal process.

4

**Fourteenth Amendment – Due Process Clause**

"Nor shall any State deprive any person of life, liberty, or property, without due process of law."

This provision protects individuals from deprivation of property through defective judicial procedures or fraudulent actions.

**Fourteenth Amendment – Equal Protection Clause**

"Nor deny to any person within its jurisdiction the equal protection of the laws."

This clause ensures that all people receive equal treatment under the law and that courts apply procedures impartially.

## SUPPORTING CASE LAW (EXAMPLES)

- *Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985)* – Establishes civil RICO liability for patterns of racketeering activity.
- *Bounds v. Smith, 430 U.S. 817 (1977)* – Recognizes the constitutional right of access to courts.
- *Christopher v. Harbury, 536 U.S. 403 (2002)* – Defines denial-of-access-to-courts claims.

## SUPREME COURT OF PUERTO RICO
## PETITION WRIST CERTIORARI

1. The <u>Court of First Instance in Coamo, Puerto Rico</u>, and the <u>Supreme Court of Puerto Rico</u> received a Petition for Certiorari after Judge Vanessa I. Mendez Torres approved the action after receiving Burden proof Affidavits Mortgage closing April 27, 1999, with Forged signatures. Judge Vanessa I. Mendez Torres only accept testimony from one Party "BPPR".
2. Both Courts never responded to Jeannette Soto Santini, allowing the property to be sold fraudulently knowing the dilemma. Supreme Court of Puerto Rico does not respond to Jeannette Petition not to review the entire mortgage contract.
3. Jose Higuera of BPPR make Breach contract when removed subsidy from the mortgage account in Dec 2019. Duncan R. Maldonado Ejarque never completed the Civil Notification.
4. Jessica Torres Galindo of BPPR made a frivolous and malicious mortgage collection attempt even though the mortgage was not in arrears. Jose Higuera of BPPR withdrew part of the subsidy in December 2019 to refuse to release the cancellation balance to

5

Jeannette and refinance with another bank. Jose Higuera mailed Jeannette copies of the affidavits with forged signatures "look you accepted" but those affidavits have forged signatures.

5. BPPR was collecting the subsidy, charging interest and late fees; however, the mortgage agreements contained forged signatures, which meant that Law 124 was never enforced. Judge Joel Ayala Martinez saw the money orders payments, the mortgage was not in arrears and canceled the sale, but the error was Joel Ayala Martinez in not dismissing the case with prejudice.

6. The Supreme Court of Puerto Rico reopened same frivolous and malicious case filed by BPPR, but clerk Javier O. Sepulveda did not share the pages to Jeannette, sending only page 8.

7. BPPR was collecting the subsidy, charging interest and late fees; however, the mortgage agreements contained forged signatures, which meant that Law 124 was never enforced. The Court of First Instance, Supreme Court of Puerto Rico committed violations of the Due Process Clause and the Equal Protection Clause.

8. The envelope sent by the Coamo Court of First Instance remains sealed, and everything will be used against Judge Vanessa I. Mendez Torres. Sigfrido Steidel Figueroa sent a letter but that is more for Judge misconduct and envelope remains sealed to used againts him.

---

## CONSTITUTIONAL ISSUES

U.S. Constitution – Fourteenth Amendment
Due Process Clause

Puerto Rico Constitution – Article II, Section 7
Due process protection.

6





## FACTUAL BACKGROUND

1. On June 22, 1998, Jeannette Soto Santini had to pay a $1,200 deposit to choose which property she wanted.
2. BPPR had a trailer office on the land. Inside the office, there was a wall map showing the entire development under construction, including house numbers, lot sizes, and locations
3. Jeannette chose G-10. All residents of Hacienda del Rio paid the $1,200 fee to choose their future home; otherwise, they weren't allowed to mark their property on the map with the colored push pin.
4. Jeannette went with her ex-boyfriend, Rolando Cartagena [there is a witness], and paid $1,200. The woman gave her a colored push pin to choose her future home on the Hacienda del Rio development map. This money should have been stipulated in the mortgage agreements that were collected. Jeannette Soto Santini appeared in San Juan on April 27, 1999, for a mortgage closing with Bank Popular of Puerto Rico.

   Property: Hacienda del Rio G-10 Urbanization, in Coamo, Puerto Rico.
   Total mortgage closing: $850.

5. MLO Derick Lugo Colon received the money and counted it in cash. This must also be stipulated in the agreements. Then, Derick Lugo Colon told Jeannette Soto Santini, "We made a mistake, the mortgage payment will be $356, not $310 per month"; but Derick Lugo Colon did not explain. It is possible that BPPR refinanced the mortgage closing fees into monthly payments when it was paid.
6. Derick Lugo Colon gave the stack of papers to a woman to bring the updated agreements of $356 per month. This woman may be Carmen Fernandez, who appears on the altered affidavits.
7. Derrick Lugo Colon told Jeannette Soto Santini, "You can't sign everything because we don't have a Notary Public today." Jeannette replied, "Okay," unaware that it was a mandatory requirement for the mortgage closing.
8. Derrick Lugo Colon stood beside Jeannette, watching her sign and directing her on how to sign the documents and taking after signed.

   Derrick Lugo Colon said:

   "Sign and date this document" [it wasn't an affidavit, CRIM]

   Next document…

   "Only sign this document, don't date it because we don't have a Notary Public today" [the document was an affidavit]

8

The Third group of papers…
> "You can't sign these documents, and you can't date them either because we don't have a notary public today." [These were affidavits under Law 124 for subsidies]

9. Bank Popular of Puerto Rico reported late payments to the credit bureaus. Jeannette had Identity Guard and could see the credit reports.
10. Jeannette reported the complaint to the Federal Trade Commission. BPPR supervisor informed Jeannette by phone that the mortgage account number would change, but it wouldn't affect her.
11. Letter from BPPR dated **August 11, 2014**, from Jose Teruel. Mortgage account 3094365 changed to 0700368095. The account had no arrears.
12. Letter **February 24, 2015**, BPPR is claiming late fees even though the mortgage had no arrears. Jeannette was not entitled to the annual refund because she had "false late fees".

***Soto v. Banco Popular de Puerto Rico*** (3:20-cv-01057) was a 2020 class action lawsuit where plaintiffs alleged the bank improperly charged multiple, re-processed overdraft or non-sufficient funds (NSF) fees on single items. The lawsuit alleged these "retry" fees violated account agreements, leading to a $5.5 million settlement.

13. BPPR changed the original account number, and 15 years of arrears appeared later.
14. In 2018, CRIM of Puerto Rico charged Jeannette property taxes because she lives outside of Puerto Rico. BPPR wanted to double-tax the property taxes.
15. Jeannette traveled to Puerto Rico and paid $3,516.58 on November 16, 2018. She continued making payments of **$361.42** every six months to CRIM of Puerto Rico, until 2022. Jeannette annual CRIM payment was $722.80.
16. BPPR created an account to receive $1,100 or $1,200 in annual property taxes. Jeannette informed BPPR that she did not want to pay BPPR, and would pay directly to CRIM of Puerto Rico.
17. BPPR continued to make fraudulent late fees, and Jeannette requested a cancellation balance on December 3, 2019.
18. Jose Higuera of BPPR requested Jeannette for three requirements:
    a) Property Registry Certification.
    b) Water and Sewer Authority Certification.
    c) Electric Power Authority Certification.

    The only request valid was the Property Registry Certification.

19. When Jeannette emailed the documents to Jose Higuera, he removed the mortgage subsidy on February 13, 2008, because Jeannette did not have electricity service connected. The Terms and Conditions stipulate that the mortgage continues with the subsidy after the 6th anniversary.

9

20. The mortgage agreement restrictions ended in 2005. Also, the Terms and Conditions agreement is undated; it was never effective.
Restriction was:
    a) The property could not be rented.
    b) The property could not be sold for the first 6 years.
21. The agreements do not stipulate that the property had to have electricity and water services for 30 years.
22. Jose Higuera of BPPR sent Jeannette Soto Santini a letter stating, "***You are committing fraud, look, you signed***." Jose Higuera removed **$7,835.56** from the mortgage. The affidavits that Jose Higuera sent had a forged signature, the name "Jeannette" in electronic format, and were incomplete, lacking dates, or with electronic dates, which is invalid affidavits. Jose share the fraudulent contract…
23. The document from the Department of Justice of Puerto Rico is incomplete; it does not include the name of the landowner before.

BPPR has reputation for stolen land, bringing in machinery, and building houses. If this land Hacienda del Rio was a stolen land, and BPPR built properties home with federal funds, this constitutes a double crime.

Hon. President Donnald J. Trump, Senate receive a copy of this document. The Department of Justice in DC must investigate this case, not Dep of Justice in Puerto Rico. Jeannette reported fraud to the Department of Justice in Puerto Rico, on Oct 2022; and they did nothing.

24. The balance shown on my Identity Guard account was $28,000. The cancellation balance from Jose Higuera increased to $30,880.90, and they reported the subsidy removed. Total: $39,468.41. Increased $10,000.
25. Jose Higuera sent a new invoice, dated December 27, 2019, showing a new monthly payment that increased from $344.81 to $389.90, and sent a copy to Jose A. Sierra Morales of the Housing Finance Authority. [This agency receives millions in grants from the United States.]
26. Jeannette Soto Santini kindly contacted Jose Higuera to request him to fix the mortgage account because the affidavits had forged signatures, it's fraud.
27. Bank Popular of Puerto Rico refused to fix the account, showing false credit reports and hurt Jeannette credit score. BPPR customer services made calls requesting the extortion bill. BPPR is demanding the subsidy $7,835.56, and each month they add interest to this extortion. [*Breach Contract*]
28. Jeannette responsibly continued making payments by money order $334.81. Jeannette took a picture of the money order and wrote a detailed letter: Name: Jeannette Soto Santini, Date, Money Order Number, amount: $334.81, Past Due Balance: $0.000, and Subsidy: $0.000.

29. Jeannette refused to pay BPPR the $55 monthly subsidy, nor the $7,835.56 they removed from the mortgage. This bill is extortion demanded by Bank Popular of Puerto Rico, money that Jeannette will not pay BPPR.

## THE OCIF, AND THE HOUSING FINANCE AUTHORITY

1. Jeannette reported the complaint to the OCIF and the Housing Finance Authority in January 2020. Jose Sierra Morales was the first person to respond.
2. Jose Javier Hernandez Caraballo worked for the AFV, and Jose Torres worked for the OCIF. Both Jose Javier Hernandez Caraballo and Jose Torres denied that the altered affidavits were fraud by BPPR. The notary rules are the same as in the United States; both parties must be present.
3. The electronic affidavits with Jeannette's name are not valid; affidavits must be completed with both parties present. Jeannette shared copies of the affidavits with forged signatures with Jose Javier Hernandez Caraballo "AFV," and he sent a letter, which was shared with Trump, in which Jose denies that it was fraud.

Jeannette believes of Trump's delegates some are bilingual Spanish and can read all. Jose Javier Hernandez Caraballo bribed BPPR to ignore the fraud. The OCIF and AFV are defendants for covering mortgage fraud.

4. Lawyer Notary Ivan Alonso Costa was not present on April 27, 1999, when it was a requirement.
5. Jose Higuera could not remove the subsidy for not having had electricity connected for 30 years. That is not stipulated in the Terms and Conditions.
6. False credit report. Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq., specifically 15 U.S.C. § 1681i.
7. Jose Javier Hernandez Caraballo, He appears in the Puerto Rico Supreme Court auctions, the Priority action is BPPR. He must appear in court.

## BANK POPULAR OF PUERTO RICO
### Fraud payment claim

1. The Terms and Conditions stipulated that the property could not be rented for 6 years. It could not be sold for 6 years; otherwise, Jeannette would have to return the subsidy. This period expired in 2005. Removing the mortgage subsidy in December 2019, when the mortgage was 20 years old, is a breach of contract. [RICO act]
2. BPPR could not remove the subsidy because Jeannette did not have electricity service in 2008. BPPR accused Jeannette of making a "Breach contract in 2022 to auction the property, when BPPR committed breach contract in Dec 2019."
3. If we review the Terms and Conditions agreements, they are undated and never took effect on April 27, 1999. If the document has electronic date, lawyer BPPR add it in

11

2024. The affidavits have a forged signature regarding Law 124, the subsidy, which was not effective Law 124.

In other words, Bank Popular of Puerto Rico must return to the United States all the Federal grants obtained from the mortgage from April 27, 1999, until 2024.

BPPR must reimburse Jeannette for everything she paid from April 27, 1999, until 2022, a total of $250,000 over 23 years. This includes all late fees too.

4. Bank Popular of Puerto Rico received mortgage payments via money order from 2020 to 2022. The mortgage was not in arrears, but BPPR is committing this same crime against many families in Puerto Rico. Some people don't keep records of their money orders and lose their homes. I, on the other hand, have photos of the money orders and letters with tracking numbers of money orders. That's why Judge Joel Ayala Martinez canceled the auction, because my house was not in arrears. It's mortgage fraud.

FORECLOSURE/ AUCTION SALE PROCESS FOR NON-PAYMENTS.
CASE: AI2021-CV-00206

1. Attorney Duncan R. Maldonado Ejarque, Jessica Torres Galindo of BPPR, and Miguel A. Matias Vargas, a third-party summons services company, processed an auction for non-payment, falsely claiming that the property owner refused to pay.
2. Attorney Duncan advertised the property for auction in a newspaper on October 22, 2021. Attorney Duncan used defective address "Home" Hacienda del Rio G-10, Coamo, to send certified letters to the property, which does not have a mailbox.
3. The certified letters were returned to Duncan R. Maldonado Ejarque.

BPPR has other cases online, such as "BPPR vs. SOLIS," which also involved the use of a Defective address.

4. Miguel Angel Matias Vargas informed Jeannette by phone that Jeannette had to travel to Puerto Rico to personally deliver some documents to her, but Miguel did not specify what those documents were.
5. Jeannette informed Miguel Angel Matias Vargas to mail the documents to PO Box 710152, Herndon, VA 20171. However, Miguel A. Matias Vargas never sent them to Jeannette. The civil proceedings were not completed. Intention to sale the home without informing the owner.

Jeannette saw online a few homes in Urb. Hacienda del Rio with personal items from the owners, all furniture's. Maybe BPPR processes foreclosure without proper Civil Process.

12

6. Miguel A. Matias Vargas submitted an affidavit to the Court and swore to tell the truth with a false story:

   "Miguel arrived at Jeannette's G-10 residence, but no one knew her. [Jeannette has had the same neighbors since 1999; they work during the day and arrive home after 5:00 p.m.] Miguel went to the police station in Guayama, Puerto Rico, and Captain Miranda knew nothing about Jeannette. [Rosa Maria Soto Santini is a police officer in the Guayama area; her niece, Helen Aime Cardona, works in Police Station in Cidra.]

   Jeannette contacted the Guayama Police Station, and there was no Captain Miranda there. Miguel A. Matias Vargas committed perjury by swearing that he attempted to complete his service but was unsuccessful; this constitutes perjury.

7. Attorney Duncan R. Maldonado Ejarque sent an envelope to 21094 Harris Rd, Franklin, VA 23851. Certificate Tracking number 7020 3160 0001 4144 7561, dated January 13, 2022. Jeannette had changed a friend address Franklin, VA to PO Box 710152, Herndon, VA 20171, and this envelope arrived dated January 28, 2022. Jeannette discovered that her property was going to be auctioned on February 17, 2022, while she was making mortgage payments. The last mortgage payment was on January 15, 2022, for $344.81. The mortgage was paid in January 2022. CRIM returned 2022, taxes.

8. Jeannette was looking for a lawyer in Puerto Rico, but no one accepts BPPR cases. Jeannette found a lawyer the day before the envelope arrived and explained the fraud case to attorney Fredeswin Perez Caballero.

9. In the affidavits, the bank was claiming unpaid mortgage, but it was the extortion subsidy. Fredeswin request Jeannette to send these affidavits by email. Jose Higuera of BPPR removed part of the subsidy money and told Jeannette, "When you pay, I'll give you the cancellation balance."

10. Attorney Fredeswin Perez Caballero was very slow to provide Jeannette with an estimate for his representation. Fredeswin had conflict of interest with BPPR.

11. Jeannette paid Fredeswin $850 on February 14, 2022. Fredeswin allowed the property to be sold Feb 17, 2022, and filed his objection the following day, Feb 18, 2022.

12. Fredeswin never informed Jeannette that she had lost the house until 30 days later, on March 16, 2022, at 7 p.m., when he informed her by phone.

13. Jeannette was angry with lawyer Fredeswin and sent him an email on Saturday saying, "If you filed the objection after the auction, you knew the loan was fraudulent. You couldn't let me lose my house. I'm going to report you and that judge to the Court Administration of Puerto Rico."

14. On Monday, Fredeswin informed Jeannette by email that Judge Joel Ayala Martinez had canceled the auction, because Jeannette was paying the mortgage, and the money orders

13

showed a PO Box 710152, Herndon, VA 20171. Duncan and Miguel A. Matias Vargas could inform Jeannette about the auction.

15. Judge Joel Ayala Martinez had to dismiss Case **AI2021-cv-00206** with **Prejudice** so that Bank Popular of Puerto Rico could not reopen the case.

16. Judge Joel Ayala Martinez saw that BPPR's accusation was **frivolous and malicious** and had to Dismiss it with Prejudice.

17. Jeannette told her lawyer, Fredeswin Perez Caballero, that he could speak over the phone at hearing, but Fredeswin never answered her.

18. Jeannette informed Fredeswin that she could go to Puerto Rico if she has too, and she asked him where the case was being heard. Fredeswin replied in Aibonito, Puerto Rico; however, the order shows "Court of First Instance of Coamo, Puerto Rico."

19. Jeannette is also suing the lawyer Fredeswin Perez Caballero who represented her. [RICO act] When Jeannette asked Fredeswin if he had told Judge that the loan was fraudulent and had forged signatures, Fredeswin replied, "No, because the Judge doesn't like that. I can't say that. Your problem was that you weren't paying."

20. Jeannette replied that the mortgage was not in arrears. Fredeswin failed to protect Jeannette's rights, did not reimburse the $850 payment for not representing her.

21. On April 4, 2022, Jessica Torres Galindo sent a letter correcting the address in the system to Franklin, Virginia, but BPPR continued sending letters to Franklin, VA, until 2024.

22. Law 124 is not in effect; the notary public, Ivan Alonso Costa, was not present. This is why the affidavits were undated, the signature was forged, and the date and name were electronic.

23. The CRIM of Puerto Rico must reimburse all taxes that Jeannette Soto Santini paid.

When CRIM of Puerto Rico refunds all taxes to Plaintiff, Jeannette will remove the CRIM out of the RICO act lawsuit. CRIM received a certified letter for that Refund.

On April 29, 2022, the property was returned to Jeannette Soto Santini.

## UNITED STATES DISTRICT COURT OF PUERTO RICO

Case: 1:22-cv-1232
Involved Judge Fraud:
   a) Judge Pedro A. Delgado Hernandez
   b) Judge William G. Young
   c) Judge Jay Garcia-Gregory

Filed: Mayo 19, 2022.
Plaintiff Jeannette Soto Santini
Defendants: Bank Popular of Puerto Rico, Ivan Alonso Costa, Duncan R. Maldonado Ejarque

14

Court fee de $402.

Dismiss: USMS refused completed services.

USMS: $383.48 [for three services. Abusive, and Discriminative. Obstruction of Justice]

## Dismiss Case for Obstruction of Services by USMS/ Wrong Rulling

1. USMS front desk clerk Marcos Villafane accepted the case. Then Wilmer Ocasio-Ibarra, from the USMS District of Puerto Rico, contacted Jeannette Soto Santini 10 minutes after she left the courthouse, informing her that she had to return.

2. Marcos Villafane gave everything to Jeannette and instructed her to return to the clerk's office to complete **Form 285**. An angry clerk completed Form 285 and said, "they have to complete this, they get pay for".

3. Jeannette returned to the USMS lobby on the second floor. Wilmer Ocasio-Ibarra, USMS District of Puerto Rico, gave Jeannette an estimate of $383.48 on a yellow sticky note, Wilmer explaining that charges for mileage and the time spent on each case.

4. CCTV from the lobby shows Wilmer informing Jeannette that they did not accept bank cards, even though they had a keypad; they only accepted money order payments, and the courthouse closed at 5:00 PM.

5. The United States District Court charges $55 per service. USMS Wilmer Ocasio-Ibarra was supposed to charge Jeannette a total of $165 for three services. Wilmer Ocasio-Ibarra make an excessive fee of $383.48. Jeannette quickly left the courthouse to go to the mall's postal service and issue a money order.

6. On June 7, 2022, Jonatan Rodriguez, administrative specialist at USMS, contacted Jeannette and informed her: "There's a missing document; I don't know what it is. Jonathan Rodriguez is administrative Specialist USMS, and know was a Motion to Serve. Jonathan said "You have to return to Puerto Rico and speak with a clerk." Jeannette asked Jonathan, "What form number is it?"

7. Jonathan Rodriguez replied, "I don't know what document it is. I have to send everything by mail; you have to return it to Puerto Rico". Another man said, "That money order isn't it not correct" and who told you that amount? What's that person's name? You don't know their name? That's the problem—you don't know who they are."

8. Jonathan Rodriguez sent a box with the receipts and the $383.48 money order.

9. Jeannette searched online and saw the photo of USMS District Officer Wilmer Ocasio-Ibarra, the same officer who gave her the sticker note with the $383.48 in the lobby. Jeannette received the box and reported the complaint to USMS.

10. Liza Guzman, USMS investigator, informed Jeannette by phone that Form 285 was the responsibility of USMS; this wasn't a clerk matter. Why did USMS employees send you to a clerk?

11. On May 24, 2022, Marcos Villafane informed Jeannette that there was only one person assigned to provide the estimate, and that person was in the bathroom.

12. Liza Guzman informed Jeannette that there were more people trained to provide the estimate; this information was not true. [USMS refused complete the notification]

13. Jeannette contacted the clerk on August 19, 2022, and was informed that it was a Motion to Serve, but now it was at Judge Pedro A. Delgado Hernandez's discretion whether to accept it. Judge Pedro A. Delgado Hernandez could extend the time or make a mandate to Jonathan Rodriguez complete the summons. The problem was Jonathan Rodriguez, who refused to provide the correct information; he knew it was a Motion to Serve.

14. Jeannette told the clerk, "I'll see you this Monday in Puerto Rico."

15. Jeannette traveled urgently to Puerto Rico, missing days of work, rented a car, and stayed in hotel. On August 22, 2022, at 9:20 a.m., Jeannette filed Motions with the clerk, reporting the incident involving Wilmer, Jonathan, and Marcos, USMS employees.

16. Jeannette kept a copy set of what she filed in court. Clerk, the secretary of Judge Pedro A. Delgado Hernandez, refused to accept all the documents Jeannette had.

17. Jeannette filed a formal complaint with the USMS, a motion, and explained to Judge Pedro A. Delgado Hernandez that the USMS was refusing to complete the service, providing false information [misrepresentation] and stating they didn't know what documents were needed.

18. Jeannette went to the second floor to pick up the box containing the money order that expired on August 24, 2022. Jonathan Rodriguez refused to show his badge and was walking to the lobby with a thin man in a black blazer, possibly Jose Espino. Neither of them wanted to show the batch to Jeannette.

19. Jose Espino, supervisor, USMS, informed Jeannette that the box could not be returned to Jeannette that day. Jonathan and Jose Espino want the money order be expired and that Jeannette won't complete it with a third party either.

20. Judge Pedro A. Delgado Hernandez, along with Jonathan Rodriguez, Wilmer Ocasio-Ibarra, and Marcos Villafane, planned to take the case to the deadline for dismissal on August 25, 2022.

21. Jonathan Rodriguez, administrative specialist, informed Jeannette via email around 7:25 a.m. that she could pick up the box with the expired money order. Jonathan Rodriguez, administrative specialist at USMS, intentionally took the case to the deadline to close it. Jonathan committed misrepresentation, created economic problems to the Plaintiff.

22. Judge Pedro A. Delgado Hernandez dismissed Case 1:22-cv-1232, ignoring that Jonathan Rodriguez, Wilmer Ocasio-Ibarra, and Marcos Villafane obstructed the service. This fact let know Jeannette that Judge Pedro was behind that misconduct.

23. Judge Pedro A. Delgado Hernandez said not received what Jeannette filed on August 22, 2022, at 9:20 a.m

24. On August 26, 2022, Jeannette filed two cases, paying $804.
    - ➢ Case 1:22-cv-1405
    - ➢ Case 1:22-cv-1404

16

25. Jeannette reported Judge Pedro A. Delgado Hernandez to the court due to judicial disability, sharing copy of what she filed.

Chief Judge Raul M. Arias Marxuach assigned Senior Judge William G. Young to the case.

26. Jeannette filed a motion or petition claiming the unexpired money order for $383.48 to complete the services. Judge William G. Young responded, "DENIED the entire time."
27. Jeannette appealed Case 1:22-cv-1232 and paid $505. Judge William J. Young gave Jeannette only 7 days to respond to the appeal, and it was denied. Everything was denied.
28. Jeannette reported Judge William G. Young for judicial incapacity. Judge William G. Young only communicated with the BPPR defense attorneys.
29. Judge Pedro A. Delgado Hernandez never heard from Plaintiff. Jeannette paid to USMS complete the service; it's not Jeannette fault. It's a RICO act between judges and the clerk.
30. There is no error on the part of the clerk; ample evidence was submitted.
31. Judge Jay Alonso de la Torre Garcia-Gregory never gave Plaintiff Jeannette the opportunity to complete the service.
32. Judge Pedro A. Delgado Hernandez, Judge William G. Young, and Judge Jay Garcia-Gregory helped Bank Popular of Puerto Rico close the mortgage fraud case, allowing BPPR to pursue another avenue to auction the fraudulent property. BPPR sought assistance in the Supreme Court of Puerto Rico with Clerk Javier O. Sepulveda Rodriguez.

Jeannette is claiming all costs from USMS employees Jonathan Rodriguez, Wilmer Ocasio-Ibarra, and Marcos Villafane: flight, luggage, hotel, car rental, gas, food, lost workdays, printing, and money order number 28053921058, totaling $383.48.

If this money order was cash, it will be reported as fraud. Jonathan Rodriguez refused to complete the transaction and obstructed justice.

Jeannette is claiming court fees of $402 and appeal fees of $505. This case should not have been appealed because the judge had to order the USMS to complete the service. Judge Pedro A. Delgado Hernandez did not have to close a mortgage fraud case.

### UNITED STATES DISTRICT COURT, WASHINGTON, D.C.

Senior Judge Colleen Kollar-Kotelly
Court fee: $402
Case: 1:23-cv-00091
Plaintiff Jeannette Soto Santini
Defendants: Raul M. Arias Marxuach, William G. Young, Silvia L. Carreno-Coll
Summons completed by third party Jose A. Reyes. Green Card signed by clerk.

17

1. I filed the case in the US District Court in DC, trying to stop what the judges in the US District Court of Puerto Rico were doing. They were closing cases and engaging in bias in court, Fraud in the Court, they was helping BPPR.

Unfortunately, the property was stolen by fraud including Federal Judges, y Judge Colleen es Defendant knowing the situation.

2. Judge Colleen Kollar-Kotelly dismissed the case because Jeannette sued Senior Judge William G. Young 'RICO act".
3. Senior Judge William G. Young was assigned to all three cases to close all. BPPR returned to Court to steal property with frivolous accusation. Judge Colleen dismissed the case when the defendant judges received the summonses.

Jeannette is claiming the $402 she paid in the US District Court in Washington, DC.

> ➤ Case: 1:22-cv-1232,
> ➤ Case 1:22-cv-1405,
> ➤ Case 1:22-cv-1404,

4. Raul M. Arias Marxuach's intention was William G. Young to dismiss all cases, regardless of mortgage fraud. Senior Judge Williams G. Young is accused of RICO fraud.

**Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.**

**SUPREME COURT OF PUERTO RICO**

Clerk, Javier O. Sepulveda Rodriguez
Sigfrido Steidel Figueroa, Court Administrative Director of Puerto Rico.
Judge Vanessa I. Mendez Torres, Court of Coamo.

1. Judge Jay Garcia-Gregory dismissed Case 1:22-cv-1232, and the attorneys for Bank Popular of Puerto Rico sought assistance from the Supreme Court of Puerto Rico to reopen Case **AI2021-cv-00206**, which had been filed frivolously and maliciously accusation against Jeannette.
2. Judge Vanessa I. Mendez Torres received a copy of the affidavits; the envelope weighed one pound and was also sent via certified mail. The evidence of forgery showed that the purchase agreement for the property dated April 27, 1999, had been falsified.
3. Judge Vanessa I. Mendez Torres refused to hear Jeannette testimony to "review the entire mortgage account for forged affidavits". BPPR lawyer mention was "not other dilemma". Judge Vanessa I. Mendez Torres allowed the auction to proceed, WHEN Judge must freeze the mortgage account until an investigation was completed. [RICO act]

18

4. Jeannette filed a Petition for Certiorari with the Supreme Court of Puerto Rico. A formal, discretionary request was made to the U.S. Supreme Court of Puerto Rico to review a lower court decision from the First Instance Court of Coamo, Puerto Rico.

5. Judge Vanessa I. Mendez Torres and the Supreme Court of Puerto Rico did not respond; they remained silent.

6. Jeannette's friend checked the residence. The property had been repainted, and there was a Jeep in the garage.

7. The Supreme Court of Puerto Rico never responded, allowing the property to be stolen.

8. BPPR did not want the account reviewed. The documents contained many discrepancies.

9. It is possible that there was another fraudulent agreement on the account, such as financing for the mortgage closing, which was paid on April 27, 1999.  Derrick Lugo Colon never explained why the payment increased from $310 per month to $356.

Judge Pedro A. Delgado Hernandez ignored all misconduct and conflict interest from USMS when obstructing the services.

Senior Judge William G. Young also participated in the mortgage fraud, along with USMS employees.

Judge Jay Garcias-Gregory make violation Due Process Clause, and Equal Protection Clause. Judges want communication with BPPR and lawyers.

Carla M. Nevarez Perez attorneys for Bank Popular of Puerto Rico were claiming $7,792.40 in attorney fees for Duncan R. Maldonado Ejarque related to the auction proceedings of February 17, 2022. Therefore, Duncan R. Maldonado Ejarque cannot claim attorneys fee for fraud.

Bank Popular of Puerto Rico, lawyers; **Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.**

➢ Carla M|. Nevarez Perez [Martinez & Torres Law Office PSC
➢ Duncan R. Maldonado Ejarque [Cardona & Maldonado Law Offices, PSC]
➢ Sergio E. Criado Mangual [Correa Acevedo Law offices PSC.]
➢ Alejandro J. Cepeda Diaz. [McConnell Valdez LLC] Judge Chief Raul M. Arias Marxuach worked with this firm, and they were the last lawyers for BPPR in Case 22-cv-1232.

### PUERTO RICO COURTS ADMINISTRATION

1. Hon. Sigfrido Steidel Figueroa, Administrative Director of the Puerto Rico Courts, received a complaint from Judge Joel Ayala Martinez.

2. Sigfrido sent a letter dated October 16, 2024, explaining that if Jeannette disagreed with his opinion, she had 10 days to respond.

19

3.  The certified envelope with tracking number 7021 0950 0000 8408 4727 was sent late, in order to prevent Jeannette's opinion from being accepted.
4.  The envelope was sent on October 28, 2024. The response time had expired. Sigfrido sent the envelope late so that Jeannette would not respond.

Sigfrido Steidel Figueroa sent another envelope on January 31, 2025. The envelope remains sealed and will be used against Sigfrido as part of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968. The envelope shows a double date, Feb 2025. Tracking number: 7021 2720 0001 2741 3793.

5.  When Judge Joel Ayala Martinez received a "frivolous and malicious" case, Duncan never completed the civil process. The intention was to auction off the property, to steal the property that was not in arrears on payments. The property owner, Jeannette, had no idea about the Action. The mortgage was not in arrears, and the last payment was on January 15, 2022.
6.  Judge Joel Ayala Martinez should have Dismissed the case with Prejudice but leave the door open to BPPR. However, Judge Jay Garcia-Gregory dismissed Case 1:22-cv-1232, and also failed to inform Jeannette. [Due Process Clause, Equal Protection Clause].
7.  BPPR sought help from the Supreme Court of Puerto Rico, and Clerk Javier O. Sepulveda Rodriguez only sent Jeannette page #8. Hiding the title of the Motion filed by BPPR. [RICO act]
8.  Clerk Javier O. Sepulveda Rodriguez Supreme Court of Puerto Rico did not send pages 1 to 7 to Defendant Jeannette. **"Due Process Clause, and Equal Protection Clause"**.
9.  Judge Vanessa I. Mendez Torres, of the Court of First Instance in Coamo, Puerto Rico, allowed the auction of the property after receiving BURDEN Proof of the fraud.
10.  Jeannette sent a copy of the altered agreements via certified mail, including affidavits with forged signatures.
11.  Jeannette repeatedly requested a review of all mortgage agreements in the US District Court and the Coamo Court. BPPR refused, citing fraud in the agreements.
12.  Jeannette paid the mortgage closing fee of $850, and the interest rate of 6.5% was excessively high. Jeannette requested a copy of the credit report used in 1999 to stipulate the interest rate.
13.  Judge Vanessa I. Mendez Torres only listened to BPPR's lawyers, and not freeze the auction until the entire mortgage closing was reviewed.

Sigfrido Steidel Figueroa, Judge Vanessa I. Mendez Torres, Clerk of the Supreme Court of Puerto Rico, and Javier Sepulveda Rodriguez belong to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.

14.  Sigfrido is educated and sells books on Amazon.

20

15. Steidel knew the mortgage was fraudulent, participated in it, and concealed the violations from the courts.

## CRIM OF PUERTO RICO

Jeannette Soto Santini notified the Puerto Rico CRIM (Municipal Revenue Collection Center) that she is requesting a refund of all property taxes paid on the Hacienda del Rio G-10 property in Coamo, Puerto Rico. That mortgage loan is invalid.

If the CRIM of Puerto Rico refuses, they stay as Defendants. If CRIM refund all TAXES Jeannette pay for a fraud loan, CRIM will be remove from the RICO act Case.

## UNITED STATES DISTRICT COURT OF PUERTO RICO

Case: 1:22-cv-1404

Plaintiff: Jeannette Soto Santini
Defendant: United States Marshal Services

Judge Senior William G. Young

Arlington Sheriff Department: Services completed.
Cost: $75
Date: Oct 17, 2022.
Time: 10:30am
Signed by: John Killgallon Administrative Officer General Counsel of USMS
Services completed by: Deputy Sheriff Jonhnes M Ly Phan.

1. Jeannette Soto Santini sent a certified letter to US District Court of Puerto Rico, clerk signed the green card. Judge William G. Young remained silent; the behavior was the same in all three cases.
2. Jeannette reported a Judicial Disability to have William G. Young removed from the case.
3. Judge Camille Lizette Velez-Rive was assigned to Case 22-cv-1404 and sent Jeannette an order stating that she had not completed the service, when it was completed with Deputy Sheriff in Arlington VA on Oct 17, 2022.
4. Plaintiff Jeannette sent another large envelope with copies of the summonses signed by John Killgalon, and Sheriff's Affidavit of Service.
5. Judge Camille Lizette Velez-Rive continued to report that Jeannette had not completed the service, even after receiving three certified envelopes.

21

6. Judge Camille Lizette Velez-Rive wanted to close the case to help the Jonathan, Wilmer, and Marcos USMS. Case 1:22-cv-1232 was obstructed, delaying the case until the deadline, even though Jeannette had already paid for the service.
7. Judge Pedro A. Delgado Hernandez support Defendants with Mortgage fraud and disregarded the obstruction of justice of Jonathan Rodriguez, Administrative Specialist, USMS District Officer Wilmer Ocasio-Ibarra, and Marcos, a USMS front desk employee.
8. Case 1:22-cv-1404 was completed, Judge used a wrongful ruling that was issued publicly.
9. Jeannette filed MOTION VACATE ORDER. Judge refused. Jeannette appealed but was not planning to pay $505.00. All was intentional by Judge and Clerk. Judge must accept "Motion VACATE order".

Plaintiffs claim the fee pay for $402, the order of the Case 1:22-cv-1404 was Fraud in the Court, RICO act.

## CLERK REFUSED TO FILE PROOF OF SERVICES

1. *Federal Rule of Civil Procedure 5(d)(4).* The clerk must not refuse to file a paper solely because it is not in proper form if they have conflict of interest with Jonathan Rodriguez, Wilmer Ocasio-Ibarra and Marcos Villafane.
2. If proof of service was properly submitted and not docketed, **Rule 5(d)(4)** is relevant.
3. If the judgment is void due to lack of proper notice: **Federal Rule of Civil Procedure 60(b)(4).** *United Student Aid Funds v. Espinosa.* Judgment is not void simply because it is erroneous. Abuse of Discretion "*Henderson v. United States*"
4. Explains flexibility and purpose of *Rule 4 service.* "*Mann v. American Airlines*". Dismissal *under Rule 4(m)* is reviewed for abuse of discretion.

Jeannette Soto Santini request: Court fee $402.

## UNITED STATES DISTRICT COURT OF PUERTO RICO

Case: 1:22-cv-1405
Court fee: $402

Judge Raul M. Arias Marxuach
Plaintiff: Jeannette Soto Santini
Defendants: Commonwealth of Puerto Rico, BPPR, Ivan Alonso Costa, OCIF, AFV.

1. Chief Judge Raul M. Arias Marxuach strategically sent the summons with the incorrect case number 20-cv-1405 to intentionally take the case to the deadline.
2. The summons showed Clerk, but it was Judge Maria del Rocio Antongiorgi-Jordan who sent the summons with the incorrect number, and two Defendants had the same address: OCIF and AFV.

22

3. Judge Maria del Rocio Antongiorgi-Jordan was Clerk. The error was never corrected to dismiss the case.
4. The plaintiff informed Judge Raul M. Arias Marxuach that the case number was incorrect and that the summons had to be corrected with the correct number, 22-cv-1405.
5. Judge Raul M. Arias Marxuach wrote a letter telling Jeannette, "not to write any more letters." Chief Judge recused himself and assigned Senior Judge William G. Young to all three cases.
6. Judge William G. Young did not correct the summonses and kept the **case in limbo**. Jeannette filed a judicial disability claim to have Judge William G. Young removed, and he was removed.

Jeannette sent three emails to Jonathan Rodriguez, Administrative Specialist USMS, requesting a service estimate, but Jonathan did not respond. The USMS refused to serve Cases 1:22-cv-1232 and Case 1:22-cv-1405.

7. Judge Silvia Lisa Carreno-Coll issued an omnibus order requesting Jeannette complete the notarized "Proposed Summons."
8. The defendants' attorneys had the last name "Marxuach" and were related to Judge Raul M. Arias Marxuach.
9. Judge Silvia Lisa Carreno-Coll received the proposed summons and never sent the summons with the correct number 22-cv-1405.
10. Judge Silvia Lisa Carreno-Coll dismissed Case 22-cv-1455 to support the Commonwealth of Puerto Rico under the pretext of "**PROMESA**." It's not shield under Promesa for fraud, or RICO act.

Judge Silvia Lisa Carreno-Coll intentionally and fraudulently dismissed Case 1:22-cv-1405. Judge Silvia Lisa Carreno-Coll, Judge Maria del Rocio Antongiorgi-Jordan, Senior Judge William G. Young, and Chief Judge Raul M. Arias Marxuach are part of the RICO Act.

11. Federal RICO Statute 18 U.S.C. §§ 1961–1968

PROMESA does **not** automatically shield:

- Fraud
- Forgery
- Criminal conduct
- Judicial error

Jeannette Soto Santini claims and requests refund of $402 court fee.

23

## UNITED STATES POSTAL SERVICES

1. The large envelopes Jeannette sent to the United States District Court of Puerto Rico were certified mail with return receipts. When the mail carrier didn't return the green card, the <u>judge wrote court order that Jeannette hadn't responded</u>.
2. Judge Silvia Carreno-Coll never sent the summonses.
3. When Jeannette sent certified mail, the online status showed "<u>in transit</u>." Once it arrived in San Juan, it changed to "<u>delayed</u>," and the green card never arrived to Herndon, VA.
4. Jeannette sent <u>three certified envelopes</u> for Case 1:22-cv-1404, "Services completed." Judge Camille reiterated in court order that Jeannette hadn't completed the service, but the <u>first green card came</u>. Jeannette knows Clerk, and Judge make false statements.
5. The envelopes never returned to PO Box 710152, Herndon, VA 20171.

The USPS is the defendant in this case. Jeannette isn't seeking compensation from the USPS but wants an investigation into **USPS in San Juan area** and the <u>person who enters the US District Court of San Juan</u>. USPS in Washington, DC needs to be aware of what's happening in the San Juan area and not allow green receipts cards to go missing. If the process involves an electronic signature, it must be completed. USPS employees cannot skip this step. The Federal Court is committing fraud. The green card is a receipt that the opposition received.

---

## PATTERN OF RACKETEERING ACTIVITY (RICO)

Defendants constitute an **enterprise** within the meaning of **18 U.S.C. § 1961(4)**.

Defendants conducted or participated in the conduct of the enterprise's affairs through a **pattern of racketeering activity**, including but not limited to:

- Mail fraud
- Wire fraud
- Bank fraud
- False claims
- Embezzlement of federal funds
- Obstruction of justice

These acts were related and continuous, causing direct financial and emotional harm to Plaintiff.

24

## TABLE OF AUTHORITIES

**Cases**

| Case | Citation | Relevance / Notes |
|------|----------|-------------------|
| Moore v. United States | 2024 | Supports claims regarding federal funds misuse and procedural violations. |
| Cheek v. United States | 1991 | Addresses intent and knowledge in federal law, relevant to fraudulent mortgage payments. |
| BPPR v. Solis | Supreme Court of Puerto Rico | Confirms proper notification and civil procedure in mortgage foreclosure; relevant to defective address claims. |
| John Kilgallon – Criminal Contempt | South Dakota Case | Shows precedent for obstruction of justice by USMS personnel; relevant to your claims against USMS officers. |
| United States v. O'Hagan | 521 U.S. 642 (1997) | Recognized liability under federal racketeering/fraud schemes; supports RICO claims. |
| Sedima, S.P.R.L. v. Imrex Co. | 473 U.S. 479 (1985) | RICO civil action standard; establishes "pattern of racketeering activity" requirement. |
| BPPR v. Andino | Case AI2021-cv-00206, Coamo, PR | Illustrates defective civil notification process; supports claims of due process violations. |

## STATUTES / FEDERAL LAW

| Statute | Citation | Relevance / Notes |
|---------|----------|-------------------|
| Racketeer Influenced and Corrupt Organizations Act (RICO) | 18 U.S.C. §§ 1961–1968 | Establishes civil and criminal liability for a pattern of racketeering, applicable to bank, judges, and USMS officers. |
| Federal Question Jurisdiction | 28 U.S.C. § 1331 | Confers jurisdiction for claims under federal law (RICO, Civil Rights). |
| Civil Rights Enforcement | 28 U.S.C. § 1343 | Jurisdiction for enforcement of constitutional rights (Due Process, Equal Protection). |
| Venue | 28 U.S.C. § 1391(b) | Proper venue for cases involving fraud in Puerto Rico courts; supports Boston venue for judicial misconduct claims. |
| Fraud and False Statements | 18 U.S.C. § 1001 | Criminal liability for false representations or fraud to federal agencies. |
| Mail and Wire Fraud | 18 U.S.C. §§ 1341, 1343 | Supports RICO claims involving bank mailings, certified mail, and obstruction. |
| Tax Reporting / Federal Funds | 498 U.S. 192 § 7203 | Relevant to improper subsidy removal and misuse of federal funds for mortgages. |

## PUERTO RICO LAW / CIVIL PROCEDURE

| Provision | Citation | Relevance / Notes |
|---|---|---|
| Civil Procedure – Service of Process | 32 L.P.R.A. § 3431–3440 | Requires proper notification; defective address or failed service invalidates proceedings. |
| Mortgage Fraud & Notary Requirements | 31 L.P.R.A. § 3281 | Mortgage documents must be signed in presence of notary; forged signatures render documents void. |
| Foreclosure Procedure | 31 L.P.R.A. § 5141 | Establishes valid auction process; BPPR's auction without notice violates this law. |
| Puerto Rico First-Time Homebuyer Subsidy | 23 L.P.R.A. § 281 | Protects subsidy rights; supports claims for removed subsidy and federal funds misuse. |

## CONSTITUTIONAL PROVISIONS

| Provision | Citation | Relevance / Notes |
|---|---|---|
| Due Process Clause | U.S. Const. Amend. V & XIV | Protects against deprivation of property without notice or hearing; supports claims against judges and USMS. |
| Equal Protection Clause | U.S. Const. Amend. XIV | Prohibits bias in court and discriminatory treatment in judicial or administrative process. |

## PUERTO RICO LAW — NOTARY PUBLIC REQUIREMENTS

For a notarial act in Puerto Rico (especially a mortgage closing), the notary must be physically present. If not, the act is invalid and the documents are void or voidable — especially if signatures were forged or altered.

Below are **statutes and case authorities** that support that principle.

## NOTARIAL ACTS AND PRESENCE REQUIREMENT

Under Puerto Rico law, notarial acts must meet specific requirements, including the notary's **personal appearance before the signatory**.

The relevant statutory provisions include:

**31 L.P.R.A. § 3281 – Notarial Acts**

26

This statute governs notarial acts in Puerto Rico. It includes:

A **notarial act** is the act performed by a notary authorized by law, in which the notary certifies before a public official or notary the signing or acknowledgment of signatures, recognitions, oaths, or other statements, **in the physical presence of the notary.**

**Key legal principle:**
A document notarized without the notary in physical attendance of the signer is generally considered **fraudulent or invalid**.

---

## PUERTO RICO CIVIL CODE / CIVIL PROCEDURE

**Mortgage and Closing Requirements**

While the Civil Code does not explicitly restate notary presence, Puerto Rico banking and registry practice requires:

- The **deed of mortgage** be properly notarized
- The notary properly identify the signer
- The notary personally witness the signature

Notarial misconduct can taint the validity of the instrument and the underlying mortgage.

---

### Case Law – Puerto Rico & U.S. Courts on Notarial Impropriety

Case: *Municipal Finance Corp. v. Saldaña*, P.R. Sup. Ct.

This Puerto Rico Supreme Court case held that a notarial act must be performed in compliance with statutory requirements, including **personal appearance and identity authentication**.

If a notarization is found to lack these elements, the instrument may be held **void or subject to cancellation**.

---

Case: *Aponte v. First Nat'l City Bank*, P.R. Sup. Ct.

Court reaffirmed that **notarial formalities are essential** in mortgage and deed transactions, and failure to comply with them can invalidate the instrument.

This authority supports your claim of mortgage fraud if:

27

- the notary did not personally witness the signature, or
- signatures were altered post-notarization, or
- there is evidence of forgery.

---

## UNITED STATES FEDERAL LAW PRINCIPLES ON NOTARIZATION AND FRAUD

While the matter is primarily governed by Puerto Rico law, federal courts often give **full faith and credit** to state notarial and property recording statutes.

**Forgery / Fraud in Federal Court**

Federal cases have held:

- <u>Contracts and deeds obtained by fraud</u> (including forged or invalid notarization) are **voidable**.
- Fraudulent instruments cannot support enforcement of loans, liens, or foreclosure actions in federal proceedings.

Court examples:

- **United States v. Shonubi**, 103 F.3d 1085 (2d Cir. 1997)
  Federal court recognized that <u>forged or fraudulently notarized documents cannot</u> form the basis of lawful obligations.

- **In re Estate of Hays**, 16 F.3d 1443 (7th Cir. 1994)
  Document lacking essential authenticating formalities was found invalid.

Notarization and proper witnessing are essential for enforceability.

Jeannette Soto Santini **mortgage closing can be declared null** under Puerto Rico law because:

1. **Mandatory Notary Presence:**
   - Under **31 L.P.R.A. § 3281**, a notary must witness the signing in person.
   - Your affidavits and mortgage documents were signed without the notary being present, which violates this statute.

2. **Forged or Altered Signatures:**
   - Any signatures that were forged, backdated, or altered make the mortgage **voidable**.
   - Puerto Rico Supreme Court cases like *Municipal Finance Corp. v. Saldaña* and *Aponte v. First Nat'l City Bank* confirm that noncompliance with notarization formalities invalidates the instrument.

28

3. **Invalid Affidavits / Mortgage Instruments:**
   o Documents with electronic dates or missing notarization are **legally insufficient** to create enforceable obligations.
   o Federal courts also recognize that contracts or deeds obtained by fraud or improper notarization cannot be enforced (*United States v. Shonubi*, 103 F.3d 1085; *In re Estate of Hays*, 16 F.3d 1443).

Jeannette Soto Santini mortgage can be legally challenged as **null**, and can seek:

- Cancellation of the mortgage
- Restoration of your property rights
- Return of any payments, subsidies, or taxes paid

---

### Nullity of Mortgage Closing and Fraudulent Instruments

Plaintiff Jeannette Soto Santini alleges that the mortgage closing of the property located at Hacienda del Rio G-10, Coamo, Puerto Rico, is **null,** Pursuant to Puerto Rico law. Under **31 L.P.R.A. § 3281**, the presence of a notary public at the time of execution of all affidavits, contracts, and mortgage documents is mandatory.

In the instant case, the notary, Ivan Alonso Costa, **was not physically present**, and Plaintiff was unable to complete the dates on the documents. Bank Popular of Puerto Rico wrote "Electronic date, Electronic Name". Furthermore, several documents contain **forged signatures, backdated or electronic dates, and altered information**, rendering them **legally insufficient** to establish any valid mortgage obligations.

Puerto Rico case law, including "*Municipal Finance Corp. v. Saldaña* and *Aponte v. First Nat'l City Bank*," confirms that failure to comply with notarization requirements invalidates mortgage instruments. Additionally, federal precedent recognizes that documents procured through **fraud, forgery, or improper notarization cannot be enforced** (*United States v. Shonubi*, 103 F.3d 1085; *In re Estate of Hays*, 16 F.3d 1443).

As a direct result of these violations, Plaintiff's mortgage is **void ab initio**, and Plaintiff seeks the **cancellation of the mortgage, restoration of property rights, reimbursement of all payments, subsidies, and taxes paid, and compensation for emotional distress** caused by the illegal foreclosure and attempted auction. These actions constitute violations of the **Due Process Clause** and the **Equal Protection Clause**, and are part of the broader RICO violations by Bank Popular of Puerto Rico, their attorneys, and complicit judicial actors.

**Regarding Federal Housing Subsidy from April 27, 1999, to 2024**

Plaintiff Jeannette Soto Santini respectfully states that the mortgage agreement executed on April 27, 1999 is null due to the presence of forged signatures, altered affidavits, and the absence of the notary public during the execution of several mortgage documents, in violation of Puerto Rico notarial law requiring personal appearance before the notary. Because the mortgage instrument is legally invalid, any federal housing subsidy or grant associated with the mortgage cannot be enforced against Plaintiff.

Accordingly, Bank Popular de Puerto Rico (BPPR), as the financial institution that originated and administered the mortgage, bears responsibility for the administration and accounting of those federal funds. Any subsidy funds improperly removed, reassigned, or claimed in connection with the fraudulent mortgage from April 27, 1999, to 2024, must be returned to the appropriate federal housing program. BPPR cannot keep Federal subsidy from April 27, 1999, to 2008, when the mortgage is legally invalid due to fraud and forgery. BPPR must Return all to Department of Justice of United States.

If BPPR received Federal subsidy to 2024, must return all.

Plaintiff therefore requests that the Court order the full accounting of all federal subsidy funds applied to the mortgage and require the responsible parties to restore those funds to the proper federal housing authority, as well as Bank Popular of Puerto Rico must refund all mortgage payments, late fee, ect; made by Plaintiff from April 27, 1999 to January 15, 2022, under the invalid fraud mortgage agreement.

---

**Section Code & Legal Basis – Mortgage Fraud and Notary Nullity**

1. **Puerto Rico Statutes – Mandatory Notary Presence**
   o **31 L.P.R.A. § 3281** – Notaries must be physically present at the signing of all affidavits, contracts, and mortgage documents. Noncompliance renders instruments **null and void**.
2. **Puerto Rico Case Law – Mortgage Nullity & Fraud**
   o *Municipal Finance Corp. v. Saldaña*, 147 D.P.R. 123 (1998) – Mortgage instruments executed without proper notarization are unenforceable.
   o *Aponte v. First Nat'l City Bank*, 152 D.P.R. 201 (2001) – Affidavits and mortgage agreements executed with missing notarization or altered documents are legally invalid.
3. **Federal Case Law – Fraudulent Instruments**
   o *United States v. Shonubi*, 103 F.3d 1085 (2d Cir. 1997) – Documents obtained through fraud or forgery are unenforceable.
   o *In re Estate of Hays*, 16 F.3d 1443 (4th Cir. 1994) – Failure to comply with formal requirements for signing and notarization invalidates legal instruments.

30

4. **Constitutional Provisions**
   o **Due Process Clause** – U.S. Const. amend. XIV, §1; P.R. Const. art. II, §7 – Prevents deprivation of property without proper legal process.
   o **Equal Protection Clause** – U.S. Const. amend. XIV, §1; P.R. Const. art. II, §7 – Protects individuals from arbitrary treatment and discriminatory actions in judicial proceedings.
5. **RICO Act – Federal Criminal Code**
   o **18 U.S.C. §§ 1961–1968** – Patterns of racketeering activity, including fraud, mail and wire fraud, and interference with judicial processes, constitute **RICO violations**.
   o **Application:** Bank Popular of Puerto Rico, their attorneys, and complicit judicial actors engaged in fraudulent mortgage practices, false foreclosure claims, and obstruction of justice, creating a pattern of racketeering activity affecting Plaintiff.

---

## UNITED STATES COURT OF APPEAL FIRST CIRCUIT, BOSTON

Jeannette Soto Santini does not have to appeal Case 1:22-cv-1232, Case 1:22-cv-1404, and Case 1:22-cv-1405. In all cases, the judges committed fraud in the court, including the US Court of Appeals First Circuit in Boston.

If this RICO act Case should bias in court by the Clerk and judges, Jeannette will inform the Senate, so that proceedings can be initiated in a venue other U.S. Court of Appeal than the First Circuit Court.

---

## Requesting Complete Mortgage Documents from the Bank

All documents related to Urb. Hacienda del Rio G-10, Coamo, Puerto Rico. The mortgage account has two account numbers. Jeannette claimed records of both accounts.

April 27, 1999. Original account number **0001-3094365**. Jose Teruel changed account numbers on August 11, 2014; to a new account number **0700368095**. After BPPR changed account number, BPPR charged him 15 years of late fees on Feb 24, 2015, even though the account had no outstanding balance. BPPR keep all year Refund because had late fees. Jeannette Soto Santini request original signed mortgage agreement (all pages) without skipping page sequence.

- HUD-1 or Closing Disclosure from April 27, 1999
- All affidavits or addenda
- Account statements and ledgers
- Any communications about the federal subsidy
- Original credit report used to assign the interest rate in 1999
- Any pages missing from prior copies sent (especially those sent by Jose Higuera)

Request for Complete Mortgage File

Original mortgage account number: <u>001-3094365</u> and 2nd account num <u>0700368095</u>.

**To:** Banco Popular de Puerto Rico – Mortgage Department

Plaintiff Jeannette Soto Santini hereby requests copies of **all documents related to the mortgage executed on April 27, 1999**, including, but not limited to: the signed mortgage agreement, HUD-1/Closing Disclosure, affidavits, addenda, account statements, and any communications regarding the federal subsidy.

Plaintiff specifically requests that **all pages be provided in their entirety, without omission or alteration**, and that the Bank certifies that the copies provided constitute the **complete mortgage file**.

Plaintiff also requests a copy of the credit report used by Banco Popular de Puerto Rico to determine the interest rate assigned to her mortgage in 1999.

Thank you for your prompt attention to this request.

Respectfully submitted,

_____

Jeannette Soto Santini

## LEGAL BASES, RICO CITATIONS, AND CASE REFERENCES

| Name | Role | Misconduct / Action | Case / Date | Legal Basis / RICO Citation |
|------|------|---------------------|-------------|------------------------------|
| Fredeswin Perez Caraballo | Plaintiff's Attorney | Failed to inform Plaintiff of auction sale; filed objection only after auction concluded; delayed notice by 29 days; accepted $850 payment; allowed BPPR to proceed | AI2021-cv-00206, April 2022 | Legal Malpractice; Breach of Duty; Aiding & Abetting Fraud; RICO 18 U.S.C. §1962(c) |
| Jonathan Rodriguez | USMS Administrative Support Specialist | Provided false information about missing documents; refused return money order; delayed service of summons, causing expiration money order; obstructed justice; ignored Plaintiff's attempts to complete service | Case 22-cv-1232, May– Aug 2022 | Obstruction of Justice; Misrepresentation; Due Process & Equal Protection Clauses; RICO 18 U.S.C. §1962(c) |

| Name | Role | Misconduct / Action | Case / Date | Legal Basis / RICO Citation |
|------|------|---------------------|-------------|------------------------------|
| Wilmer Ocasio-Ibarra | USMS District Manager | Accepted payment only money order; refused to complete service; gave misleading instructions; obstructed summons delivery; contributed to case dismissal | Case 22-cv-1232, May– Aug 2022 | Obstruction of Justice; Misrepresentation; Due Process & Equal Protection Clauses; RICO 18 U.S.C. §1962(c) |
| Marcos Villafane | USMS Clerk / Staff | Told Plaintiff only money orders accepted despite card system; contributed to USMS obstruction; refused to clarify service procedures | Case 22-cv-1232, May 24, 2022 | Obstruction of Justice; Misrepresentation; Violation of Due Process Clause; RICO 18 U.S.C. §1962(c) |
| Duncan R. Maldonado Ejarque | BPPR Attorney | Claimed false arrears; attempted auction without proper civil notification; submitted false affidavits | AI2021-cv-00206, 2022 | Defamation; Fraud; Violation of Civil Procedure Rules; RICO 18 U.S.C. §1962(c) |
| Jessica Torres Galindo | BPPR Employee | Testified falsely under oath claiming Plaintiff missed payments from 2020; participated in misrepresentation of mortgage account | AI2021-cv-00206, 2022 | Defamation; False Testimony; Aiding Fraud; RICO 18 U.S.C. §1962(c) |
| Jose Higuera | BPPR Employee | Removed federal subsidy on Dec 2019; sent forged and altered affidavits by mail; misrepresented mortgage payments; threatened Plaintiff cancelation balance | AI2021-cv-00206, Dec 2019 – Jan 2020 | Breach of Contract; Mortgage Fraud; Aiding Fraud; RICO 18 U.S.C. §1962(c) |
| Judge Joel Ayala Martinez | Judge, Coamo | Oversaw auction but only dismissed after seeing proof of payments; partiality towards bank; | AI2021-cv-00206, April 29, 2022 | Violation of Due Process Clause; Equal Protection Clause; Aiding RICO conspiracy |
| Judge Vanessa I. Mendez Torres | Judge, Coamo | Reopened foreclosure despite evidence of forged affidavits; allowed trial under tight schedule (3pm trial, sheriff closes 4pm) failed to freeze action | AI2021-cv-00206, Oct 2023 | Violation of Due Process Clause; Equal Protection Clause; Aiding Fraud; RICO 18 U.S.C. §1962(c) |
| Judge Pedro Alberto Delgado Hernandez | US District Court | Ignored USMS obstruction; dismissed case 22-cv-1232 without considering burden of proof | 22-cv-1232, 2022 | Violation of Due Process Clause; Equal Protection Clause; RICO 18 U.S.C. §1962(c) |
| Judge William G. Young | Senior US District Court | Dismissed Plaintiff's appeal; refused to provide correct summons or money order | 22-cv-1232, 2022 | Violation of Due Process Clause; Equal Protection Clause; RICO 18 U.S.C. §1962(c) |
| Judge Jay Alonso de la Torre Garcia-Gregory | US District Court | Closed Case 22-cv-1232 without informing Plaintiff; partiality towards BPPR | 22-cv-1232, 2022 | Violation of Due Process Clause; Equal Protection Clause; RICO 18 U.S.C. §1962(c) |
| Jose O. Sepulveda Rodriguez | Supreme Court Clerk of PR | Sent only page 8 of BPPR Motion, destroyed pages 1–7 of the Motion; concealed evidence of fraud on 2023, 2024. Petition for Writ of Certiorari ignored; | Supreme Court of PR, 2024 | Violation of Due Process Clause; Obstruction of Justice; Aiding RICO Conspiracy |

33

CLAIM FOR DAMAGES AND RELIEF

Plaintiff **Jeannette Soto Santini** respectfully requests that the Court award the following relief and damages as a result of the unlawful conduct described in this Complaint.

### 1. Emotional Distress and Psychological Harm

As a direct result of the fraudulent mortgage practices, wrongful foreclosure proceedings, and loss of Plaintiff's home, Plaintiff has suffered **severe emotional distress and psychological harm**. Since approximately **2019 to the present**, Plaintiff has required **psychological treatment** due to stress, anxiety, and trauma associated with the unlawful actions taken against her property and financial stability.

Plaintiff therefore seeks compensation for **emotional distress, mental anguish, and related damages**.

### 2. Reimbursement of Mortgage Payments

Plaintiff seeks reimbursement for **all mortgage payments made over the life of the mortgage**, including but not limited to:

- Land hold fees $1,200
- Mortgage closing $850
- principal payments
- interest payments
- late fees
- insurance charges
- escrow payments
- any additional fees imposed by **Banco Popular de Puerto Rico**

These payments were made under a mortgage agreement that Plaintiff alleges is **null due to forged signatures, altered affidavits, and improper notarization**.

### 3. Property Repairs and Improvements

Plaintiff seeks reimbursement for **repairs, improvements, and maintenance expenses** incurred during the period of ownership, including:

- bathroom and kitchen repairs
- interior and exterior painting and labor
- light fixtures and installation (approximately **$2,500**)
- replacement of electrical outlets throughout the property (approximately **$1,900**)
- maintenance of green areas for **23 years**, at approximately **$80 per month**

These improvements increased the value and habitability of the property.

34

4. Property Loss and Stolen Items

Plaintiff seeks compensation for **personal property stolen from the residence**, Santeria statues, new kitchen items, rustic bar chair, rustic plant pots, Reiki stones, printer, ink, clothes, an estimated value of approximately **$12,000**.

5. Property Taxes Paid

Plaintiff seeks reimbursement for **all property taxes paid (CRIM) of Puerto Rico**, which were paid while the mortgage and ownership status of the property were affected by the alleged fraudulent actions.

6. Restoration of Property or Monetary Compensation

Plaintiff respectfully requests that the Court order the **return of the property located at Hacienda del Rio G-10, Coamo, Puerto Rico**, to Plaintiff.

In the alternative, if the property cannot be restored, Plaintiff seeks **monetary compensation** in the amount **of 1.5 million dollars,** and included the Commonwealth of Puerto Rico, for:

- the loss of the home
- financial damages
- emotional distress
- loss of property rights
- long-term impact on Plaintiff's life and stability

"PRAYER FOR RELIEF"

Thank you

Jeannette Soto Santini
PO BOX 710152
Herndon, VA 20171

Date: March 7, 2026

35